UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DISIREE TOOMBS,

       Plaintiff,

 -v-                                                No.  16-CV-3352-LTS

NEW YORK CITY HOUSING AUTHORITY,
JOHN LOPEZ, individually and in his official
capacity, JOHN AND JANE DOES 1-10 and
XYZ CORP. 1-10,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Disiree Toombs ("Plaintiff" or "Toombs") brings this civil rights action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), New York Executive Law § 296 et seq. (the "NYSHRL"), and New York City Administrative Code § 8-101 (the "NYCHRL"), against Defendants New York City Housing Authority ("NYCHA"), John Lopez ("Lopez"), individually and in his official capacity, John and Jane Does 1-10 and XYZ Corp. 1-10 (collectively, "Defendants").  In a seven-count Amended Complaint, Plaintiff, a former NYCHA employee, alleges that she suffered unlawful discrimination on the basis of her race and familial status, the promotion of a hostile work environment, and retaliation for lodging complaints, and also claims that Defendants failed to accommodate her as the parent of a disabled child.  (Docket Entry No. 15.)  Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all of Plaintiff's claims against them.  (Docket Entry No. 17.)

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

The Court has considered the parties' submissions carefully. For the following reasons, Defendants' motion is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's Second, Third, Fifth, and Sixth Causes of Action. Defendants' motion is denied as to Plaintiff's First, Fourth, and Seventh Causes of Action.

BACKGROUND

Except as otherwise indicated, the following facts are alleged in the Amended Complaint or drawn from documents annexed thereto. Plaintiff is a black female who resides in Brooklyn, New York, and was employed by NYCHA as a Caretaker J from July 7, 2007, until her termination on May 26, 2015, and, at all relevant times to this action, was assigned to the Jacob Riis Houses ("Riis Houses") in Lower Manhattan. (Amended Complaint ("Am. Compl."), Docket Entry No. 15, ¶¶ 3, 13, 26.) She has a minor and dependent son with severe disabilities and medical needs, requiring care and attention. (Id. ¶ 4.) Defendant NYCHA is a public housing agency in the City of New York and manages and operates the Riis Houses. (Id. ¶¶ 7, 9.) Defendant Lopez was Plaintiff's direct supervisor, an employee of NYCHA, a decision-maker regarding Plaintiff's employment, and the Superintendent at the Riis Houses. (Id. ¶¶ 11, 12.)

In her position as a Caretaker J, Toombs' duties and responsibilities included maintaining and cleaning the Riis Houses. (Id. ¶ 27.) In or about August 2013, Mr. Lopez, an Hispanic individual, became the Superintendent of the Riis Houses and, shortly thereafter, Mr. Lopez allegedly "stated at a staff meeting attended by Plaintiff as well as approximately twenty (20) other employees, the vast majority of [whom] were Black, 'I want you out of here so I can

bring in my people'" (the "August 2013 statement").  (Id. ¶¶ 29-30.)  Mr. Lopez allegedly "terminated, or ordered the termination of, at least six (6) Black employees since becoming Superintendent and replaced them with Hispanic employees."  (Id. ¶ 31.)  Plaintiff alleges that "the culture at NYCHA in general and Jacob Riis Houses in particular is discriminatory in nature and there is a clear preference [for] Hispanic employees to the detriment of Black employees similar to Plaintiff."  (Id. ¶ 33.)  Plaintiff further alleges that "[t]he discrimination against Black employees in general, and against Plaintiff in particular, [was] continuous from on or about August 2013, when Mr. Lopez became the Superintendent at the [] Riis Houses, until [Plaintiff's] unlawful termination on May 26, 2015," and that "Defendants fabricated accusations and allegations of wrongdoing against Plaintiff" "[a]s a pretext to their true discriminatory intentions."  (Id. ¶¶ 34-35.)

    According to termination correspondence, Plaintiff's termination was effectuated "in accordance with the terms set forth in the Settlement Conference held on July 21, 2014" (the "Conference").  (Id. ¶ 41.)  The Conference resulted from a letter dated June 27, 2014, which "charged Plaintiff with incompetency or misconduct" in seven specific charges.  (See id. ¶¶ 44-45.)  At the Conference, Plaintiff "'agreed' to be held 'guilty' to … two (2) [disciplinary] charges brought against her for" two separate events that allegedly took place in April 2014; the remaining five charges against Toombs were dropped.  (Id. ¶¶ 42, 44.)  Plaintiff alleges that six of the original seven charges in the June 27, 2014, letter and at issue at the Conference "were false and fabricated" and "intentionally" brought by Defendants "against Plaintiff in order to create a fictitious business reason for suspending Plaintiff, placing her on [a ten-day unpaid suspension and] probation for an entire year and ultimately terminating her."  (Id. ¶¶ 44, 62.)  Plaintiff further alleges that she "agreed to plead guilty [at the Conference] on [a] particular

charge based on advice of counsel assigned [to her] by the union and out of fear of being terminated." (Id. ¶ 49.) Plaintiff alleges that, following the Conference and her suspension without pay, "Defendants relentlessly continued [their] discrimination and harassment against Plaintiff" and filed a series of Counseling Memoranda regarding Toombs' alleged poor performance, misconduct, unexcused absences, and alleged insubordination throughout a period spanning December 2014 through May 2015. (Id. ¶¶ 64-81.)

Plaintiff alleges that Defendants are "well aware that Plaintiff's minor and dependent son suffers from severe disabilities and has medical needs," yet her "requests for a reasonable accommodation have been ignored and/or denied," including an April 2015 request for a transfer to a NYCHA location in Brooklyn to enable her to "attend to him faster and easier in case of a medical emergency." (Id. ¶¶ 82-84.)

Plaintiff also alleges that she "engaged in protected activities by making several complaints against Defendants, including, but not limited to": (1) submitting a complaint to the City of New York, Department of Investigation in or about July 2014, against "Caroline Soriano-Torres, a Hispanic female, for bringing false charges against Plaintiff in an attempt to harass and discriminate against" her; (2) submitting a complaint on or about March 26, 2015, "to the Chair and Chief Executive Officer of NYCHA, complaining of, among other things, corruption and harassment at the workplace;" (3) filing a complaint on or about May 18, 2015, "with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC")[,] bringing claims of discrimination against Defendants;" and (4) throughout "the period of 2013 through 2015," complaining to Supervisor Caretaker Felicia Ford that Lopez, Anthony Carter, and Ms. Soriano-Torres "were giving significantly more overtime

hours to Hispanic Caretakers as opposed to Plaintiff and other similarly situated Black Caretakers." (Id. ¶ 89.)

Defendants assert that the NYSDHR issued two Determinations and Orders After Investigation, on October 30, 2015 and November 20, 2015, with respect to complaints filed by Plaintiff on May 18, 2015 and June 10, 2015. (Def. Opening Br. at 9.) Defendants assert that, in both instances, the NYSDHR "found no probable cause to believe that NYCHA has engaged in or is engaging in the unlawful discriminatory practice claimed [or complained] of" by Plaintiff. (Id.) Plaintiff does not dispute that the NYSDHR issued the Determinations and Orders After Investigation. (See Pl. Response Br. at 29-31.)

## DISCUSSION

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted. (See Docket Entry No. 17.) In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [she is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). In deciding a

Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 219 (2d Cir. 2013) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).

Title VII Claims: Discrimination Based on Race, Hostile Work (First, Fourth, and Seventh Causes of Action)

Plaintiff asserts that Defendants violated Title VII by: discriminating against her on account of her race from on or about August 2013, when Lopez became the Superintendent at the Riis Houses, until her termination on May 26, 2015; promoting, allowing, encouraging and maintaining a hostile work environment for Plaintiff due to Defendants' failure and/or refusal to prevent, cure or eliminate the discrimination and the abusive work conditions Plaintiff endured; and retaliating against her for complaining of the discriminatory, harassing and disparate treatment to which she was subject by Defendants.  (Am. Compl. ¶¶ 94-99, 116-18, 126-28.) Defendants have moved to dismiss Plaintiff's Title VII claims, asserting that the Amended Complaint fails to plausibly allege that (1) any adverse employment action occurred under circumstances giving rise to an inference of discrimination, (2) an actionable hostile work environment under Title VII existed, and (3) a causal connection between a protected activity and an adverse employment action existed, as required to state a claim for retaliation.

Race Discrimination Claim

Title VII provides, in relevant part, that, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C.S. § 2000e-2(a) (LexisNexis 2012).  "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).  An "adverse employment action" is a "materially adverse change in the terms and conditions of employment[,]" and "[t]o be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation marks, ellipses, and citation omitted).

Plaintiff has not pled direct evidence of discrimination, but has sufficiently pled facts supporting a reasonable inference that she suffered discrimination on the basis of race.  The Amended Complaint alleges facts that plausibly support conclusions that Plaintiff is a member of a protected class, was qualified, and suffered one adverse employment action, and proffers "at

least minimal support for the proposition that the employer was motivated by discriminatory intent." See Littlejohn, 795 F.3d at 311.

As a black employee, Plaintiff is clearly a member of a protected class, and the parties do not dispute that she was qualified to hold the position of Caretaker J.

A termination of employment is "an adverse employment action." See Sanders, 361 F.3d at 755.  Plaintiff asserts that the Amended Complaint "is permeated with [additional] examples and allegations of adverse employment actions," including:  the August 2013 statement by Lopez, Lopez's alleged termination of at least six black employees since assuming the role of Superintendent and replacing them with Hispanic employees, the alleged fabrication of "accusations and allegations of wrongdoing against Plaintiff[,] polluting her file and record with false and unfounded accusations," Plaintiff's two separate hearings on disciplinary charges in March and June 2014, the Conference, and Plaintiff's suspension for ten days without pay and placement on probation for an entire year pursuant to the settlement reached at the Conference. (See Pl. Response Br. at 19 (citing Am. Compl. ¶¶ 29-31, 35-36, 38-39, 44-47, 90).)  The alleged August 2013 statement by Lopez, the alleged termination of at least six black employees, and the alleged fabrication of accusations and allegations of wrongdoing against Plaintiff do not constitute "materially adverse change[s] in [Toombs'] terms and conditions of employment," and thus are not adverse employment actions for the purposes of a discrimination analysis.  See Sanders, 361 F.3d at 755.  Plaintiff "agreed to plead guilty" on one of the charges at issue at the Conference and agreed to the resulting punishment, precluding an inference of causal connection to a discriminatory motive with respect to her consequent suspension for ten days without pay and placement on probation for a year.  (See Am. Compl. ¶ 49.)  Thus, Plaintiff only plausibly alleges one "adverse employment action":  her termination on May 26, 2015.

The August 2013 alleged statement by Lopez, Plaintiff's allegation that "the culture at NYCHA in general and Jacob Riis Houses in particular is discriminatory in nature and there is a clear preference [for] Hispanic employees to the detriment of Black employees similar to Plaintiff," and that "[t]he discrimination against Black employees in general, and against Plaintiff in particular, [was] continuous from on or about August 2013, when Mr. Lopez became the Superintendent at the [] Riis Houses, until her unlawful termination on May 26, 2015" all provide at least "at least minimal support for the proposition that [Defendants were] motivated by discriminatory intent."  See Littlejohn, 795 F.3d at 311; Am. Compl. ¶¶ 29-30, 33-34.

The Defendants' motion to dismiss the first cause of action is therefore denied.

Hostile Work Environment Claim

"To establish a hostile work environment under Title VII, . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[,] and "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn, 795 F.3d at 320-21 (quotation marks and citations omitted).  To "determin[e] whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 321 (quotation marks and citation omitted).

Under a totality of the circumstances analysis, Plaintiff has sufficiently pled facts to support her allegation of a hostile work environment, as the incidents she has alleged are

plausibly "more than episodic."  See Littlejohn, 795 F.3d at 320-21.  Plaintiff's allegations of unfavorable treatment of Black workers in comparison to Hispanic workers, false disciplinary charges and counseling memoranda, and termination of several Black employees, in light of the alleged statement by Lopez to the predominantly Black group of employees that he wanted them out, are sufficient at the pleading stage to frame a claim of pervasive race-based workplace hostility.  (See Am. Compl. ¶¶ 29-30, 35, 64-81, 89.)  The frequency of the allegedly discriminatory conduct and the "pervasive" nature of the facts alleged in the Amended Complaint plausibly support at this pleading stage an inference that Defendants unreasonably interfered with Plaintiff's work performance.  See Littlejohn, 795 F.3d at 320-21.

       The Defendants' motion to dismiss the fourth cause of action is therefore denied.

   Retaliation Claim

       Title VII also prohibits discrimination by an employer against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.S. § 2000e-3(a) (LexisNexis 2005).  "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated or took an adverse employment action against [her], (2) 'because' [she] has opposed any unlawful employment practice." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted).  The "adverse employment action" standard in the context of a Title VII retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII" and "is not limited to discriminatory actions that affect the terms and conditions of employment."  Id.  However, "a plaintiff must plausibly plead a connection between the act and

[her] engagement in protected activity[,]" and "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  Id. (citations omitted).  "[T]he Second Circuit has held that an adverse action that occurs within two months or less of a protected activity . . . is sufficient to survive a motion to dismiss on the issue of causation."  Day v. City of New York, 2015 WL 10530081, at *13 (S.D.N.Y. Nov. 30, 2015) (citing Vega, 801 F.3d at 92).  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  Vega, 801 F.3d at 90.

Plaintiff has plausibly alleged that Defendants discriminated or took an adverse employment action against her by terminating her because she opposed an unlawful employment practice or that her opposition was a "but-for" cause of Defendants' adverse actions.  See Vega, 801 F.3d at 90.  Plaintiff pleads that she engaged in at least two "protected activities," including submitting a complaint to the Chair and Chief Executive Officer of NYCHA on or about March 26, 2015, and filing a complaint with the NYSDHR on or about May 18, 2015, within a two-month period of her May 26, 2015 termination.  (See Am. Compl. ¶¶ 89, 91.)  Plaintiff has plausibly pleaded a connection between her termination and those two "protected activities," as a "retaliatory purpose" can be demonstrated "indirectly by timing"—here, the alleged adverse action occurred within two months or less of the "protected activities."  See Vega, 801 F.3d at 90; Day, 2015 WL 10530081, at *13.  Plaintiff's retaliation allegations are thus "sufficient to survive a motion to dismiss on the issue of causation."  See Day, 2015 WL 10530081, at *13.

The Defendants' motion to dismiss the seventh cause of action is therefore denied.

Discrimination Based on an Association with a Disabled Person in Violation of the ADA (Second Cause of Action)

Plaintiff asserts that Defendants violated the ADA by ignoring and/or denying Plaintiff's requests for a reasonable accommodation of her association with, and role as caregiver for, her minor son. (Am. Compl. ¶¶ 100-06.) Defendants seek dismissal of this claim, arguing that Plaintiff's request does not fall within the ambit of a reasonable accommodation because Plaintiff herself does not have a disability and that Plaintiff fails to state a claim for associational discrimination under the ADA. (Def. Opening Br. at 15-16.)

"The ADA prohibits . . . 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.'" Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016) (quoting 42 U.S.C.S. § 12112(b)(4)). "[T]o sustain an 'associational discrimination' claim under the ADA, a plaintiff must first make out a prima facie case by establishing: 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Id. (citations omitted). In the Second Circuit, there are "three types of situations or theories that would give rise to a claim of associational discrimination: 1) 'expense,' in which an employee suffers adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) 'disability by association,' in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and 3) 'distraction,' in which the employer

fears that the employee will be inattentive at work due to the disability of the disabled person." Id. (brackets and citations omitted).  The ADA's bar on associational discrimination does not, however, require that employers provide an "employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities."  29 C.F.R. § Pt. 1630.8, app. at 349.

Plaintiff's ADA associational discrimination claim is not facially plausible, even when all reasonable inferences from the facts alleged in the Amended Complaint are drawn in her favor.  See Iqbal, 556 U.S. at 678.  As the ADA's bar on associational discrimination does not require that employers provide employees such as Toombs, who are not themselves disabled, with reasonable accommodations, Defendants were under no obligation to provide Plaintiff with one.  See 29 C.F.R. § Pt. 1630.8, app. at 349; Graziadio, 817 F.3d at 432 n.10.  Plaintiff does not allege that any adverse action was taken against her in connection with her request for transfer.  She merely alleges that she was denied favorable treatment, and does not allege that similarly situated employees with non-disabled children were given transfers to facilitate dependent care.  To the extent she intends to cite her termination as an adverse action, she fails to state an ADA claim because she alleged no facts demonstrating that the termination was motivated by any one of the "three types of situations or theories that would give rise to a claim of associational discrimination:" "expense," "disability by association," or "distraction."  See Graziadio, 817 F.3d at 432.

Accordingly, Defendants' motion to dismiss Plaintiff's ADA associational discrimination claim is granted.

Discrimination Based on Familial Status in Violation of NYSHRL (Third Cause of Action)

Plaintiff asserts that Defendants' termination on May 26, 2015, violated the New York State Human Rights Law ("NYSHRL"), because Defendants were aware that Plaintiff's minor and dependent son suffers from severe disabilities and has medical needs.  (Am. Compl. ¶¶ 107-15.)  Plaintiff further asserts that "familial status" became a protected category under an amendment to the NYSHRL, effective January 19, 2015.  (Id. ¶ 108; Pl. Response Br. at 32-33.)  Defendants assert that familial status did not become a protected category under the NYSHRL until January 19, 2016 (after Plaintiff's termination), and thus Plaintiff cannot pursue a claim under the amendment.  (Def. Opening Br. at 19.)

Defendants are correct:  familial status was added as a protected category under the NYSHRL on January 19, 2016, over six months after Toombs' termination.  See N.Y. Exec. Law. § 296; 2015 Sess. Law News of N.Y. Ch. 369.  Thus, Plaintiff cannot maintain her discrimination claim based on familial status in violation of the NYSHRL, and Defendants' motion to dismiss Plaintiff's third cause of action is granted.

Promoting a Hostile Work Environment in Violation of NYSHRL and NYCHRL
(Fifth and Sixth Causes of Action)

Plaintiff asserts that Defendants violated New York Executive Law §§ 296 et seq. by promoting, allowing, encouraging, and maintaining a hostile work environment for Plaintiff by Defendants' failure and/or refusal to prevent, cure or eliminate the discrimination and the abusive work conditions Plaintiff allegedly endured.  (Am. Compl. ¶¶ 119-21.)  Defendants assert that Plaintiff is precluded by collateral estoppel "from relitigating issues brought before the [NY]SDHR, which made no probable cause determinations as to both of Plaintiff's

complaints after Plaintiff had a full opportunity to present her charges with the assistance of counsel." (Def. Opening Br. at 16.)

The NYSHRL and NYCHRL both provide that a plaintiff who files a complaint with the NYSDHR thereby waives the right to bring a related action in court. See N.Y. Exec. Law § 279(9); N.Y.C. Admin. Code § 8–502(a). "Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with either the SDHR or the [New York City Commission on Human Rights]. This bar applies in federal as well as state court." Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 127 (2d Cir. 2002)). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." Id. (citing Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir. 1995)). "The election of remedies bar also precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which [a plaintiff's] [NY]SDHR complaint was based." Id. at 188.

Plaintiff pursued a complaint of discrimination with the NYSDHR by filing two complaints, on May 18, 2015, and June 10, 2015, and the NYSDHR subsequently issued two Determinations and Orders After Investigation, on October 30, 2015 and November 20, 2015. (See Def. Opening Br. at 9.)  Plaintiff does not dispute this.  Under the election of remedies bar, Plaintiff has thus forfeited the right to sue in this Court upon the claims addressed by the NYSDHR, which included both the NYSHRL and NYCHRL claims.  See Higgins, 836 F. Supp. 2d at 187-88.

The Defendants' motion to dismiss the fifth and sixth causes of action is therefore granted, pursuant to Fed. R. Civ. P. 12(b)(1).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's Second, Third, Fifth, and Sixth Causes of Action. Defendants' motion is denied as to Plaintiff's First, Fourth, and Seventh Causes of Action.

The initial pretrial conference will be held on **April 21, 2017**, at **11:00 a.m.** The parties must confer and file a joint statement in advance of the conference in accordance with the Initial Conference Order (Docket Entry No. 6).

This Memorandum Opinion and Order resolves Docket Entry Nos. 10 and 17.

SO ORDERED.

Dated: New York, New York
       March 27, 2017

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge