UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DISIREE TOOMBS,

        Plaintiff,

   -v-                                      No.  16-CV-3352-LTS

NEW YORK CITY HOUSING
AUTHORITY, JOHN AND JANE DOES 1-
10, and XYZ CORP. 1-10,

        Defendants.

------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Disiree Toombs ("Plaintiff" or "Toombs") brings this civil rights action,

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"),

against Defendants New York City Housing Authority ("NYCHA"), John and Jane Does 1-10

and XYZ Corp. 1-10 (collectively, "Defendants").  Plaintiff, a former NYCHA employee,

alleges that she suffered unlawful discrimination and a hostile work environment because of her

race and familial connection to a person with a disability, and that she was terminated in

retaliation for engaging in protected activity.  (First Amended Complaint ("FAC"), Docket Entry

No. 15.)  On March 27, 2017, the Court granted in part and denied in part Defendant's motion to

dismiss Toombs' complaint pursuant to Rule 12(b)(6), finding that Plaintiff had pleaded

adequately her claims of race discrimination, hostile work environment, and retaliation in

violation of Title VII, and dismissing Plaintiff's state-law and Americans with Disabilities Act

claims.  (Memorandum Opinion and Order ("March 2017 Order"), Docket Entry No. 31.)

Defendant NYCHA now moves, pursuant to Federal Rule of Civil Procedure 56, for summary

judgment dismissing Plaintiff's remaining claims. (Docket Entry No. 49.) The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

The Court has considered the parties' submissions carefully. For the following reasons, Defendant's motion is granted in its entirety.

BACKGROUND

Familiarity with the facts underlying this case, as summarized in the Court's March 2017 Order, is presumed. The following summary focuses on facts that are pertinent to the question of whether Defendant is entitled to summary judgment dismissing Plaintiff's remaining claims. Except as otherwise noted, the following material facts are undisputed.[1]

Plaintiff is a Black female who was employed by NYCHA as a Caretaker J from July 7, 2007, until her termination on May 26, 2015, and, at all times relevant to this action, was assigned to the Jacob Riis Houses ("Riis Houses") in Lower Manhattan. (FAC ¶¶ 3, 13, 26.)

John Lopez

NYCHA employee John Lopez began working as the Superintendent of the Riis Houses in September 2013. (Def. 56.1 ¶ 79.) In her complaint, Plaintiff alleges that, during a staff meeting attended by Black and Hispanic employees shortly after Mr. Lopez assumed that position, he stated, "I want you out of here so I can bring in my people." (Def. 56.1 ¶¶ 80, 82.)

---

[1] The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory factual proffer. Citations to Defendant's Local Civil Rule 56.1 Statement (Local Rule 56.1 Statement in Support of Defendant New York City Housing Authority's Motion for Summary Judgment ("Def. 56.1"), Docket Entry No. 50) and Plaintiff's Counterstatement (Plaintiff's Statement of Disputed Facts in Opposition to Defendant New York City Housing Authority's Motion for Summary Judgment Pursuant to Local Rule 56.1 ("Pl. 56.1"), Docket Entry No. 62) incorporate by reference citations to the underlying evidentiary submissions.

Plaintiff does not claim to have heard Mr. Lopez make the statement (see Docket Entry No. 61), and Mr. Lopez denies making the statement (Def. 56.1 ¶ 81). Plaintiff has failed to adduce any admissible evidence that Mr. Lopez made the alleged statement. Plaintiff's sole evidentiary proffer regarding the statement consists of testimony from Felicia Ford, a Supervisor Caretaker at the Riis Houses, who testified that she had "heard of things that [Mr. Lopez] said to that nature prior to [her] getting there, hearsay, though, just stuff people said;" she "[did not] remember exactly who [made the hearsay statements]," and merely testified that, "[i]t was a group of people talking." (Docket Entry No. 60-1 at 90.)

During Mr. Lopez's tenure, three "Caretaker J" employees, including Plaintiff, were terminated. One of the other terminated Caretaker J employees was Hispanic and the other did not identify his or her ethnicity in NYCHA personnel records. (Def. 56.1 ¶ 101; Docket Entry No. 73-1 at 2.) As of September 18, 2015, forty-nine percent of the NYCHA employees working at the Riis Houses identified as Black. (Def. 56.1 ¶ 102; Docket Entry No. 73-1 at 4-5.) Plaintiff claims that the number of Black Caretakers decreased from seventy-five percent to fifty percent during Mr. Lopez's tenure, but makes only two contradictory proffers in this connection, neither of which is corroborated.[2] (Docket Entry No. 61 at ¶¶ 14-17.) In her deposition, Plaintiff testified that she did not know the exact number of caretakers in 2013 and that the number never exceeded 20. (Docket Entry No. 52-1 at 74.) Plaintiff further testified that she had never seen a list of Caretakers and that she did not know how the Caretakers identified in terms of race and ethnicity. (Docket Entry No. 69-1 at 25.) In a declaration later filed in opposition to the

---

[2]    Plaintiff's general assertions that NYCHA failed to produce records documenting the work force demographics has no evidentiary significance. Plaintiff does not assert that such documents were requested and the docket does not indicate that Plaintiff brought any motion practice complaining of any failure to disclose such documents.

summary judgment motion, Plaintiff lists the first names of 21 individuals she alleges were Black and employed as Caretakers in 2013, and the first names of 7 other individuals she alleges were Hispanic and employed as Caretakers in 2013. (Docket Entry No. 61 at ¶¶ 15-16.) The record shows that, while Mr. Lopez was Superintendent, at least three Caretaker J employees who self-identified as Black left the Riis Houses because they were promoted. (Docket Entry No. 73 at ¶ 9.)

In March 2014, Mr. Lopez requested Ahmed Green's demotion from Supervisor of Grounds to Caretaker J. Mr. Green is Black. Mr. Lopez demoted Mr. Green for unsatisfactory work performance, and because he and Mr. Green had engaged in a verbal dispute. (Def. 56.1 ¶¶ 85, 87-88; Pl. 56.1 ¶ 142.) Mr. Green testified that he was demoted as a result of an argument with Mr. Lopez. (Def. 56.1 ¶ 87.) Mr. Green was replaced by Andy Rodriguez, who is Hispanic. (Pl. 56.1 ¶ 143.) NYCHA Human Resources selected Mr. Rodriguez from the civil service list; Mr. Lopez neither hired Mr. Rodriguez nor requested his assignment to the Riis Houses. (Docket Entry No. 68 at ¶ 143; Docket Entry No. 72 at ¶ 9.) Indeed, Mr. Lopez lacked the authority to terminate or hire any NYCHA employee, he could only make recommendations regarding terminations and demotions. (Def. 56.1 ¶ 76.) Mr. Lopez ultimately exercised this authority to recommend that Mr. Rodriguez be demoted from his position as Supervisor of Grounds. (Docket Entry No. 72 at ¶ 9.)

Plaintiff claims that she told Mr. Green "several times that she wanted to transfer out of Riis Houses because [Mr.] Lopez was 'harassing' her." (Pl. 56.1 ¶ 157.) According to Plaintiff, she complained to Mr. Green "about the supervision" and "about them always coming to my area. The supervision was really very hard and I would go to complain to [Mr. Green] 'cause I wanted him – he was the supervisor." (Def. 56.1 ¶ 91.) Plaintiff proffers nothing further

regarding alleged harassment by Mr. Lopez and does not claim that she complained that any such harassment was race-based.

<u>Plaintiff's Disciplinary History</u>

Plaintiff received many counseling memoranda and was cited for disciplinary infractions during her employment with NYCHA. Plaintiff alleges that many of the allegations were false and/or retaliatory.

Plaintiff received her first formal disciplinary citation on December 1, 2009, when the Riis Houses manager, Sibyl Colon, issued a "Notice of Local Hearing/Specification of Charges" charging Plaintiff with three counts of incompetency and misconduct. (Def. 56.1 ¶ 18.) This Notice of Local Hearing stemmed from five separate counseling memoranda, issued to Plaintiff on July 7, 2008, February 25, 2009, May 21, 2009, May 22, 2009, and July 2, 2009, respectively. (Def. 56.1 ¶ 19.) On December 9, 2009, Plaintiff settled these charges without a hearing. (Def. 56.1 ¶ 23.)

Between April 28, 2009, and January 28, 2013, Plaintiff received 22 other counseling and instructional memoranda for disciplinary issues concerning poor performance, time and attendance, and insubordination. (Def. 56.1 ¶ 40.) None of those memoranda led to formal disciplinary action.

On September 20, 2013, Ms. Colon issued a Notice of Local Hearing that charged Plaintiff with three counts of incompetency. (Def. 56.1 ¶ 25.) This Notice was based on four separate counseling memoranda, issued on August 21, 2012, October 19, 2012, August 9, 2013, and September 16, 2013, respectively. (Def. 56.1 ¶ 26.) On February 19, 2014, a local disciplinary hearing was held before a neutral hearing officer, who, the same day, found Plaintiff guilty of two of the three charges. (Def. 56.1 ¶¶ 35-36.)

On April 8, 2014, Anthony Carter, Assistant Superintendent of the Riis Houses, issued Plaintiff a counseling memorandum for misconduct arising from an incident during which Plaintiff stated that she "[didn't] think [her assigned task was] fair" and told Mr. Carter, "I'm not doing it and I'm leaving." (Docket Entry No. 52-2 at 49.) On April 15, 2014, Mr. Carter issued Plaintiff another counseling memorandum for failure to safeguard NYCHA property. (Docket Entry No. 52-2 at 50.) Plaintiff had left her "mop, bucket, and ringer sitting in the lobby of [466 East 10th Street] unsecured," and provided (what Mr. Carter perceived to be) a false explanation for her conduct. (Id.) Mr. Carter testified that he issued these memoranda "solely for Plaintiff's misconduct, poor work performance, and insubordination." (Docket Entry No. 53 at ¶ 2; Docket Entry No. 70 at ¶ 5.)

On June 27, 2014, NYCHA issued Plaintiff a Notice of General Trial based on seven charges of incompetency and misconduct. (Def. 56.1 ¶ 53; Docket Entry No. 52-2 at 57.) Rather than proceed with a General Trial, Plaintiff settled the charges through a "Conference Disposition" on July 21, 2014. (Def. 56.1 ¶ 56; Docket Entry No. 52-2 at 68.) In signing the Conference Disposition, Plaintiff accepted guilt for two of the seven charges—those based on Mr. Carter's April 8 and 14 counseling memoranda—and she agreed to a twelve-month General Probationary Evaluation Period. (Def. 56.1 ¶¶ 59, 61-62.) According to the terms of the Conference Disposition, "an employee who is subject to a General Probationary Evaluation Period may be terminated from employment on the basis of incompetency, misconduct or unsatisfactory service without the service of charges or a hearing." (Def. 56.1 ¶ 63.)

Following the Conference Disposition, Plaintiff encountered further disciplinary issues. On December 1, 2014, Anthony Carter issued Plaintiff a counseling memorandum for poor performance. (Def. 56.1 ¶ 66; Docket Entry No. 52-2 at 74.) In the Memorandum, Mr.

Carter noted that Plaintiff had failed to complete at least 15 different assigned tasks. (Docket Entry No. 52-2 at 74.) On February 2, 2015, Superintendent John Lopez issued Plaintiff a counseling memorandum for misconduct. (Docket Entry No. 52-2 at 76.) Mr. Lopez noted that, from September 15, 2014, to January 1, 2015, Plaintiff was late on three occasions (for a total of 30 minutes), she missed eight "swipes,"[3] and incurred an "excessive" number of absences (11 days). (Id.) Mr. Lopez's memorandum was supported with time and attendance data. (Id. at 77-83.)

Two days after receiving the February 2, 2015, counseling memorandum, Plaintiff received an unsatisfactory "Probationary Evaluation Report" for the initial quarter following her Conference Disposition. (Def. 56.1 ¶¶ 68-71.) Mr. Carter had completed the report, which assigned Plaintiff an "unsatisfactory" rating in three of the four areas of evaluation: "quality of work," "quantity of work," and "time and attendance." (Def. 56.1 ¶¶ 68-70; Docket Entry No. 52-2 at 85.)

Plaintiff continued to encounter disciplinary issues after receiving her probation report. On April 14, 2015, Plaintiff received a counseling memorandum from Mr. Lopez for further misconduct related to time and attendance. Between January 2, 2015, and April 20, 2015, Plaintiff was late on three occasions (for a total of 196 minutes), she missed seven "swipes," and incurred an "excessive" number of absences (6 days). (Docket Entry No. 52-2 at 91.) As with his February 2, 2015, memorandum, Mr. Lopez supported this memorandum with time and attendance data. (Id. at 92-98.) On May 8, 2015, Mr. Carter issued Plaintiff a counseling

---

[3]     "Swipes" refer to the process by which NYCHA caretakers "record their time at work by swiping in and out of a time clock using their NYCHA identification card," as required by NYCHA's time and attendance procedures. (Def. 56.1 ¶ 11.)

memorandum for insubordination after Plaintiff raised her voice at him in the presence of other NYCHA employees. (Docket Entry No. 52-2 at 99.)

On May 11, 2015, Mr. Lopez requested that Conrad Vasquez, the Director of Manhattan Property Management, terminate Plaintiff's employment. (Docket Entry No. 52-2 at 101.) Mr. Lopez requested Plaintiff's termination because she failed the initial "Probationary Evaluation Report," and because she received four counseling memoranda after being placed on probation on October 14, 2014. (Id.) On May 26, 2015, NYCHA's Director of Human Resources informed Plaintiff that her "employment with the New York City Housing Authority [was] being terminated in accordance with the terms set forth in the [Conference Disposition]." (Def. 56.1 ¶ 78; Pl. 56.1 ¶ 187; Docket Entry No. 52-2 at 105.)

Plaintiff's Complaints

*Complaint to the NYCHA Department of Equal Opportunity*

On November 1, 2013, Plaintiff filed a discrimination complaint with NYCHA's Department of Equal Opportunity ("DEO"). (Def. 56.1 ¶ 115; Docket Entry No. 52-2 at 21.) Neither Plaintiff nor Defendant has provided information regarding the substance of the complaint. After reviewing Plaintiff's allegations, the DEO concluded that "the issues raised [were] not within its jurisdiction, in that [Plaintiff's] allegations do not allege illegal discrimination under applicable law." (Def. 56.1 ¶ 116; Docket Entry No. 52-2 at 21.) Mr. Lopez was unaware of these allegations before his deposition on September 18, 2017. (Docket Entry No. 52-1 at 214.)

*Complaint to the Office of Inspector General*

On July 7, 2014, Plaintiff complained to NYCHA's Office of the Inspector General ("OIG"), alleging that Mr. Lopez and Caroline Soriano-Torres, Assistant Superintendent

of the Riis Houses, "want[ed] to transfer all the African American employees." (Def. 56.1 ¶ 118; Docket Entry No. 52-2 at 61-66.) Mr. Lopez was unaware of this complaint before his deposition on September 18, 2017. (Docket Entry No. 52-1 at 215-16.)

*Complaint to the City of New York's 311 Website*

On March 26, 2015, Plaintiff submitted a complaint by email through the City of New York's 311 website. (Def. 56.1 ¶ 120.) She complained of "corruption" at the Riis Houses, and stated that "the staff rights have been violated multiple times," and that there were "things being kept in house in order for these supervisors to keep abusing, harassingviolating [sic] the staff rights." (Def. 56.1 ¶ 121; Docket Entry No. 52-2 at 88.) Plaintiff also complained that Felicia Ford was "being harassed, lied on written up constantly shes [sic] a great supervisor [who was] in jeopardy of being demoted . . . ." (Def. 56.1 ¶ 121; Docket Entry No. 52-2 at 88.) Plaintiff's complaint did not mention race or discrimination.

*Complaint to the New York State Division of Human Rights*

On May 18, 2015, Plaintiff filed a complaint against NYCHA with the New York State Division of Human Rights ("NYSDHR"), alleging that she had been "discriminated against by [her] supervisors because of [her] race." (Def. 56.1 ¶¶ 123-24; Docket Entry No. 52-2 at 157-61.) The NYCHA Law Department received Plaintiff's complaint on June 2, 2015. (Def. 56.1 ¶¶ 123-24.) Mr. Lopez was unaware of Plaintiff's May 18, 2015, complaint prior to his deposition. (Def. 56.1 ¶ 126.)

On October 30, 2015, the NYSDHR issued a "Determination and Order After Investigation," which concluded that "[a]fter investigation, and following an opportunity for review of related information and evidence by the named parties, [NYSDHR] determined that there is NO PROBABLE CAUSE to believe that [NYCHA] has engaged in or is engaging in the

unlawful discriminatory practice complained of."  (Def. 56.1 ¶ 127; Docket Entry No. 52-2 at

176.)  Specifically, the NYSDHR found that Plaintiff "did not establish a nexus between any

alleged mistreatment and her membership in a protected class."  (Docket Entry No. 52-2 at 177.)

The NYSDHR dismissed Plaintiff's complaint.  (Docket Entry No. 52-2 at 178.)

*Complaints About Overtime Allocation*

Plaintiff testified that, sometime in 2014, she complained to Felicia Ford that

Hispanic Caretakers were receiving more overtime hours than Black Caretakers.  (Def. 56.1

¶ 109.)  However, Plaintiff has not proffered evidence that Hispanic Caretakers were assigned or

actually completed more overtime hours than Black Caretakers.  Nor has Plaintiff provided any

evidence that the Hispanic Caretakers were similarly situated in any way to her or to other Black

Caretakers.  Nonetheless, Plaintiff does not dispute that "after she complained to Felicia Ford, a

list of Caretakers was created in 2014, Ms. Ford would ask Caretakers if they wanted to work

overtime, and overtime was offered based on seniority."  (Def. 56.1 ¶ 110.)

DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary

judgment is to be granted in favor of a moving party where that party can demonstrate "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

For the purposes of summary judgment motion practice, a fact is considered material "if it might

affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and

citations omitted).  The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'"  Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)).

A party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Specifically, the party who bears the burden of proof at trial "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation."  Jeffreys v. N.Y.C., 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

Claims Against John and Jane Doe Defendants and XYZ Corp. Defendants

At this juncture, Plaintiff's claims against the unnamed Defendants must be dismissed.  Plaintiff has had ample time, and the benefit of discovery, to identify the John and Jane Doe and XYZ Corp. Defendants.  Because there is "no indication that [Plaintiff] has made any effort to discover the [Defendants'] name[s]" and bring them into this case, Plaintiff's claims against these Defendants must be dismissed without prejudice for failure to prosecute.  Coward

v. Town and Village of Harrison, 665 F. Supp. 2d 281, 300-02 (S.D.N.Y. 2009) (internal quotation marks omitted); see also Delrosario v. N.Y.C., No. 07 Civ. 2027 (RJS), 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010).

Discrimination Claims

Plaintiff alleges that the termination of her NYCHA employment was the product of racial discrimination. Plaintiff's discriminatory discharge claim is evaluated under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

McDonnell Douglas first requires the plaintiff to proffer evidence establishing a prima facie case of discrimination. 411 U.S. at 802; see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). "To meet the burden of production required for a prima facie case of discrimination, a plaintiff must show that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). "In order to make such a showing, the plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" Id. (citations omitted). Disparate treatment between "similarly situated employees" gives rise to a presumption of discriminatory intent.

The second step shifts the burden to the employer to offer some legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. The employer does not need to prove that the challenged action was not the product of discrimination, but must

provide a clear and specific explanation for the action. <u>Gibbs v. Consol. Edison Co. of N.Y.</u>, 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The presumption of discrimination arising from the prima facie case drops out upon such a proffer of a legitimate, non-discriminatory reason.

The burden then shifts back to the plaintiff to offer proof that would enable a reasonable fact finder to conclude that the defendant's proffered reason was a pretext for prohibited discrimination. <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 143 (2000); <u>accord</u> <u>Schnabel v. Abramson</u>, 232 F.3d 83, 88 (2d Cir. 2000). Plaintiff may rely at the rebuttal stage on the same facts used to establish the prima facie case so long as a preponderance of the evidence would allow a reasonable fact finder to find that a discriminatory violation has occurred. <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 78 (2d Cir. 2001). However, the plaintiff's own conclusory allegations will not be sufficient to overcome proffered evidence substantiating a defendant's non-discriminatory rationale for the actions. <u>See</u> <u>Jasmin v. Dep't of Labor</u>, No. 04 Civ. 10237 (LTS), 2007 WL 1746909, at *8 (S.D.N.Y. June 15, 2007).

Defendant does not dispute that Plaintiff belongs to a protected class based on her race. Neither does Defendant dispute that Plaintiff was qualified for her position as a Caretaker J. As stated in the Court's March 2017 Order, Plaintiff suffered an adverse employment action when she was terminated from her employment with NYCHA in May 2015.[4]

---

[4]    In her opposition brief, Plaintiff attempts to relitigate other allegedly "adverse employment actions." (<u>See</u> Docket Entry No. 59 at 10.) However, in deciding Defendant's motion to dismiss, the Court explained that the other events cited in Plaintiff's complaint and argued in opposition to this motion practice did not rise to the requisite level of adverse employment action. As the Court concluded, "Plaintiff only plausibly alleges one 'adverse employment action': her termination on May 26, 2015." (March 2017 Order at 8.) Plaintiff has not provided any factual or legal basis for reconsideration of the conclusions in the March 2017 Order. Therefore, the Court's discussion of Plaintiff's discrimination claim is limited to her termination. <u>See</u> <u>U.S. v. Yonkers Bd. of Educ.</u>, 856 F.2d 7, 11 (2d Cir. 1988) ("when a court decides upon a rule

Plaintiff has not proffered a prima facie case of discrimination because she has not adduced evidence from which a reasonable juror could conclude that her termination occurred under circumstances giving rise to an inference of racial discrimination.  Plaintiff's claim of discriminatory motivation rests principally on her allegation that Superintendent John Lopez said to a group of Black and Hispanic workers that, "I want you out of here so I can bring in my people."  (Def. 56.1 ¶ 80.)  However, Plaintiff has failed to proffer any admissible evidence that Mr. Lopez in fact made this statement.  Plaintiff points to Felicia Ford's testimony, which is based entirely on inadmissible hearsay and is, at best, equivocal as to what Mr. Lopez actually said.  Plaintiff has also failed to proffer any evidence to support her conclusory allegation that Hispanic Caretakers at the Riis Houses received more favorable treatment than Black Caretakers.  She has not produced any evidence that the Hispanic Caretakers actually worked more overtime hours than the Black Caretakers, and she has not produced evidence from which a reasonable juror could conclude that the relevant Hispanic Caretakers were "similarly situated" to Plaintiff in any material respect, such that disparate treatment would give rise to an inference of discrimination.  In the absence of an evidentiary basis for inferring that any of the disparate treatment that she claims occurred was race-based, Plaintiff's allegations are insufficient to make out the requisite prima facie case.

Furthermore, Defendant has proffered evidence of a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  Defendant has produced substantial evidence showing that Plaintiff's work performance was persistently deficient, that she repeatedly failed to comply with time and attendance requirements, and that she was

---

of law, that decision should continue to govern the same issues in subsequent stages in the same case").

habitually insubordinate to her superiors.  Plaintiff failed to complete her probation satisfactorily, and was terminated in accordance with the terms of the Conference Disposition she had signed to resolve serious disciplinary charges.  Further, the record shows that Plaintiff's lengthy disciplinary history pre-dates Mr. Lopez's tenure at the Riis Houses and stretches back to the beginning of her NYCHA employment.  These are legitimate, non-discriminatory reasons for Plaintiff's termination.  Plaintiff has failed to provide any evidence that these reasons were merely a pretext for discrimination.  Her allegations, many of which are inconsistent with the documentary record, that the disciplinary charges were false or contrived, do not frame a triable issue of fact as to discriminatory motive.[5]

Because Plaintiff has failed to sustain her burden of demonstrating that there is a factual basis for an inference that the termination of her employment was the product of racial discrimination, Defendant's motion for summary judgment is granted with respect to Plaintiff's First Cause of Action.

Hostile Work Environment Claims

Plaintiff asserts that she was subjected to a hostile work environment while employed by NYCHA.  (Docket Entry No. 59 at 22-25.)  In order to establish a hostile work environment claim, a plaintiff must produce evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter

---

[5]    Kirkland v. Cablevision Systems Corp., 760 F.3d 223 (2d Cir. 2014), does not support Plaintiff's assertion that the record here is sufficient to survive the summary judgment motion.  Although the plaintiff in Kirkland proffered evidence that he was mistreated in ways that were not explicitly race-based, the record upon which the Second Circuit determined that, "if at least some of [the] evidence is believed by a jury, that jury could also conclude that, despite Kirkland's negative employment reviews, his firing was 'more likely than not based in whole or in part on discrimination'" included a substantial number of remarks and circumstances explicitly indicative of racial animus.  See Kirkland at 225, 228.  The record here includes none.

the conditions of the victim's employment and create an abusive working environment."  Harris

v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); see also Fincher

v. Depository Trust and Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010).  Mistreatment,

however severe, does not constitute a Title VII violation without evidence that Plaintiff's

protected characteristic was the reason for the mistreatment.  See Alfano v. Costello, 294 F.3d

365, 377-78 (2d Cir. 2002) (finding that incidents not motivated by plaintiff's sex could not

support a hostile work environment claim in gender discrimination case).  Because Plaintiff has

failed to proffer admissible evidence from which a reasonable juror could infer discriminatory

animus, as discussed above, Plaintiff's hostile work environment claim must fail.  Defendant's

motion for summary judgment is therefore granted as to Plaintiff's Fourth Cause of Action.

Retaliation Claims

Plaintiff asserts that Defendant retaliated against her for engaging in protected

activity under Title VII.  (Docket Entry No. 59 at 17-21.)  Title VII includes an anti-retaliation

provision that makes it unlawful "for an employer to discriminate against any . . . employee[ ] or

applicant[ ] . . . because [that individual] opposed any practice" made unlawful by Title VII or

"made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding.  42

U.S.C.S. § 2000e–3(a) (LexisNexis 2005).  Retaliation claims brought under Title VII are subject

to a 300-day statute of limitations if the initial proceedings are instituted with a State or local

agency such as the NYSDHR.  42 U.S.C. § 2000e-5(e).

Retaliation claims by plaintiffs relying on indirect evidence of retaliation are

analyzed under the three-step burden-shifting analysis under McDonnell Douglas.  Hicks, 593

F.3d at 164.  To establish a prima facie claim of retaliation, the plaintiff must show: "(1)

participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an

adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Id. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination. The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." Sharpe v. MCI Commc'ns Servs., Inc., 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) (internal citations omitted).

If the prima facie case is established, the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action." Hicks, 593 F.3d at 164 (internal quotation marks omitted). Then, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Id. The plaintiff can show that retaliation was a substantial reason for the adverse employment action by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." Id. However, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013).

Plaintiff contends that she engaged in five separate protected activities: (i) her November 1, 2013, complaint to the NYCHA DEO, (ii) her July 7, 2014, complaint to the NYCHA OIG, (iii) her March 26, 2015, complaint to 311, (iv) her May 18, 2015, complaint to the NYSDHR, and (v) her complaints to Felicia Ford regarding overtime allocation. (Docket Entry No. 59 at 19.) As explained below, Plaintiff has not stated a viable retaliation claim in connection with any of these complaints.

As an initial matter, the Court notes that, because Plaintiff did not file her discrimination charge with the NYSDHR until May 18, 2015, any retaliation claims relating to adverse actions taken before July 22, 2014—300 days before May 18, 2015—are time-barred. 42 U.S.C. § 2000e-5(e).

*November 1, 2013, and July 7, 2014, Complaints*

Plaintiff has failed to proffer any evidence that the NYCHA employees who issued disciplinary citations to Plaintiff knew about her complaints. Therefore, a reasonable jury could look only to temporal proximity to determine retaliatory causation. Plaintiff has failed to identify specifically how Defendant retaliated against her, so, in the interest of drawing all reasonable inferences in her favor, and assuming that receiving a disciplinary citation could "dissuade[] a reasonable worker from making or supporting a charge of discrimination," Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006), the Court's inquiry focuses on the disciplinary actions closest in time to Plaintiff's November and July complaints.

The first disciplinary action taken after Plaintiff's November 1, 2013, complaint occurred on February 19, 2014—more than three months later. On February 19, 2014, a neutral hearing officer determined that Plaintiff was guilty of two charges of incompetency. The charges had been brought on September 20, 2013, and were based on four separate counseling memoranda issued on August 21, 2012, October 19, 2012, August 9, 2013, and September 16, 2013, respectively. Both the charges and the counseling memoranda underlying the charges pre-date Plaintiff's complaint. Plaintiff did not receive another disciplinary citation until April 8, 2014, when Anthony Carter issued Plaintiff a counseling memorandum for misconduct arising from an incident during which Plaintiff stated that she "[didn't] think [her assigned task was] fair" and told Mr. Carter, "I'm not doing it and I'm leaving." (Docket Entry No. 52-2 at 49.)

The April 8, 2014, counseling memorandum was issued more than five months after Plaintiff's November complaint.

The three-month period between Plaintiff's November 2013 complaint and the hearing officer's February 2014 decision on five-month-old charges is too long to support any reasonable inference of causation based on the temporal proximity of those events. See Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (holding that the passage of three months between plaintiff's complaint and the alleged adverse action is too long to suggest a causal relationship); see also Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."). Plaintiff has not proffered evidence that Defendant took any other action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" prior to February 19, 2014. To the contrary, the allegedly adverse actions only get farther away from Plaintiff's complaint and, thus, less supportive of a retaliatory inference.

The first disciplinary action taken after Plaintiff's July 7, 2014, complaint occurred on July 21, 2014, when Plaintiff settled charges of incompetency and misconduct through an admission of guilt. The charges were brought ten days before Plaintiff's July complaint, and were based on violations that occurred on April 1, 2014, April 8, 2014, May 7, 2014, May 12, 2014, May 13, 2014, May 15, 2014, and May 16, 2014, respectively. Plaintiff settled the charges through a procedure known as a "Conference Disposition." While the Conference Disposition occurred just a few weeks after Plaintiff's complaint, Plaintiff's admission of guilt negates any retaliatory inference that could be drawn from the proximity of these two events. Yarde, 360 F. Supp. 2d at 562 ("an inference of causation is defeated . . . if

there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory [action]").  Plaintiff did not receive another disciplinary infraction until December 1, 2014, when Anthony Carter issued Plaintiff a counseling memorandum for poor performance.  Mr. Carter issued this counseling memorandum almost five months after Plaintiff's July complaint.  As discussed above, five months is well beyond the timeframe within which a reasonable juror could infer that Mr. Carter's actions were motivated by retaliation.

*March 26, 2015, Complaint*

Plaintiff's March 26, 2015, 311 complaint does not constitute "protected activity" because she did not "clarify to the employer that [she was] complaining of unfair treatment due to [her] membership in a protected class;" rather, she complained "merely of unfair treatment generally."  Sharpe, 684 F. Supp. 2d at 406.  Nowhere in Plaintiff's 311 complaint did she mention discrimination, or any other unfair treatment based on race.  Therefore, NYCHA could not have "understood [] that the plaintiff's opposition was directed at conduct prohibited by Title VII."  Joseph v. Marco Polo Network, Inc., No. 09 Civ. 1597 (DLC), 2010 WL 4513298, at *17 (S.D.N.Y. Nov. 10, 2010).

*May 18, 2015, Complaint*

The undisputed evidence shows that Defendant was not aware of Plaintiff's May 18, 2015, complaint to the NYSDHR until June 2, 2015—one week after Plaintiff had been terminated.  Therefore, there is no objective basis from which a reasonable juror could find that her NYSDHR complaint caused her termination or any other adverse employment action.

*2014 Overtime Complaints*

Lastly, no reasonable juror could find that Plaintiff's complaints to Felicia Ford support a retaliation claim.  No causal connection can be reasonably inferred based on temporal proximity, as Plaintiff offers no concrete date from which to measure the passage of time.  Even assuming that Plaintiff complained to Ms. Ford as late as the last day of 2014, no reasonable jury could conclude based on temporal proximity that her termination nearly six months later was caused by a retaliatory motive.  As the Court has already stated, three months is insufficiently proximate to permit an inference of causation; thus, six months is also insufficiently proximate.  Further, it is undisputed that, after Plaintiff complained to Ms. Ford, Ms. Ford responded by implementing a system whereby overtime was allocated according to an objective measure: Caretaker seniority.  Therefore, the only responsive action for which there is any evidentiary proffer shows that Ms. Ford did not retaliate in response to Plaintiff's complaint—she addressed Plaintiff's concerns directly.

Because Plaintiff has failed to proffer a prima facie case of discriminatory retaliation, the Court grants Defendant's motion for summary judgment as to Plaintiff's Seventh Cause of Action.

CONCLUSION

The Court grants Defendant's motion for summary judgment in its entirety, and Plaintiff's Complaint is hereby dismissed.  The claims against Defendants John and Jane Doe and XYZ Corp. are dismissed without prejudice.  The claims against Defendant NYCHA are dismissed with prejudice.  The pretrial conference currently scheduled for September 27, 2019, at 11:00 a.m. is cancelled.  For the reasons set forth in the March 2017 Order (docket entry no.

31) and in this Memorandum Opinion and Order, the Clerk of Court is respectfully requested to enter judgment in Defendant NYCHA's favor and to close this case.

This Memorandum Opinion and Order resolves Docket Entry No. 49.

SO ORDERED.

Dated: New York, New York
August 27, 2019

  /s/ Laura Taylor Swain    
LAURA TAYLOR SWAIN
United States District Judge